1  PAUL W. CANE, JR. (SB# 100458)
   paulcane@paulhastings.com
2  KATHERINE C. HUIBONHOA (SB# 207648)
   katherinehuibonhoa@paulhastings.com
3  Y. ANGELA LAM (SB# 268718)
   angelalam@paulhastings.com
4  PAUL, HASTINGS, JANOFSKY & WALKER LLP
   55 Second Street
5  Twenty-Fourth Floor
   San Francisco, CA  94105-3441
6  Telephone:  (415) 856-7000
   Facsimile:  (415) 856-7100
7
   Attorneys for Defendant
8  O'MELVENY & MYERS LLP

9

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12

13  PAULINA KANBAR, Individually and On      CASE NO. 3:11-CV-00892-EMC
    Behalf of All Persons Similarly Situated,
14                                           **DEFENDANT O'MELVENY & MYERS**
                        Plaintiff,           **LLP'S NOTICE OF MOTION AND**
15                                           **MOTION TO COMPEL ARBITRATION**
              vs.                            **AND STAY THIS ACTION;**
16                                           **MEMORANDUM OF POINTS AND**
    O'MELVENY & MYERS, and DOES 1-           **AUTHORITIES IN SUPPORT THEREOF**
17  15, Inclusive,

18                        Defendants.        Date:      July 15, 2011
                                             Time:      1:30 p.m.
19                                           Courtroom: C, 15th Floor
                                             Judge:     Hon. Edward M. Chen
20

21

22

23

24

25

26

27

28

Case No. 3:11-CV-00892-EMC                           NOTICE OF MOTION AND
LEGAL_US_W # 68135615.8                    MOTION TO COMPEL ARBITRATION

## NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

TO PLAINTIFF PAULINA KANBAR AND TO HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 15, 2011, at 1:30 p.m., before the Honorable Edward M. Chen in Courtroom C, 15th Floor of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California, Defendant O'Melveny & Myers LLP ("OMM") will and hereby does move the Court, under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*., to compel arbitration of the individual claims in the Complaint filed by plaintiff Paulina Kanbar, and to stay litigation of the claims in the Complaint pending the completion of arbitration. *Id.* §§ 3-4.

This motion is made on the grounds that plaintiff agreed in writing to arbitrate the claims asserted in the Complaint, and is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed declaration of Sarah A. Stofferahn, the pleadings and papers filed herein, and upon such arguments as may be made by counsel at the hearing.

DATED:  June 7, 2011

PAUL W. CANE, JR.
KATHERINE C. HUIBONHOA
Y. ANGELA LAM
PAUL, HASTINGS, JANOFSKY & WALKER LLP


By: _____ /s/ Katherine C. Huibonhoa _____
             KATHERINE C. HUIBONHOA

Attorneys for Defendant
O'MELVENY & MYERS LLP

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................... 1

II. FACTUAL BACKGROUND ......................................................................... 2

    A. Upon Her Hiring, Kanbar Agreed To Arbitrate Employment-Related Disputes ........................................................................................... 2

    B. Kanbar's Claims Fall Within The DRP ................................................ 2

    C. Kanbar Participated In Mediation And Stipulated To Arbitration, Both Consistent With The DRP, But Later Refused To Continue, Citing The Ninth Circuit Court's Decision In *Davis* ......................................... 2

    D. OMM Has Not Previously Moved To Compel Arbitration ................... 4

III. THE COURT SHOULD COMPEL KANBAR TO LITIGATE THIS CASE IN THE FORUM TO WHICH THE PARTIES AGREED — ARBITRATION ................... 4

    A. The FAA Protects Arbitration Contracts As A Matter Of Federal Law ................ 4

    B. Arbitration Agreements Are Presumed To Be Enforceable ................... 5

    C. *Concepcion* Affirms That The FAA Preempts Any State-Law Rule That "Stands As An Obstacle" To Enforcing Arbitration Agreements "According To Their Terms." ................................................................. 5

    D. The DRP Should Be Enforced Here ..................................................... 6

        1. Kanbar's claims are covered by the DRP ................................... 7

        2. Under *Concepcion*, the DRP is a valid and enforceable arbitration agreement under the FAA ........................................................ 7

        3. *Davis* in any event does not excuse Kanbar from arbitration ..... 8

        4. Even assuming — erroneously, in OMM's view — that there were one or more unconscionable provisions in the DRP, the Court should sever them ................................................................ 9

        5. In the alternative, Kanbar stipulated to proceed with arbitration before JAMS and is bound by that stipulation ......................... 12

IV. CONCLUSION ........................................................................................... 13

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**CASES**

4

*Armendariz v. Foundation Health Psychcare Services, Inc.*,
5
    24 Cal. 4th 83 (2000) ......................................................................................... 9, 10

6
*AT&T Mobility LLC v. Concepcion*,
    131 S. Ct. 1740 (2011) ........................................................................................ passim
7

*Bayscene Resident Negotiators v. Bayscene Mobilehome Park*,
8
    15 Cal. App. 4th 119 (1993) ..................................................................................... 5

9
*Beynon v. Garden Grove Med. Group*,
    100 Cal. App. 3d 698 (1980)..................................................................................... 11
10

*Bolter v. Superior Court*,
11
    87 Cal. App. 4th 900 (2001) ..................................................................................... 9

12
*Booker v. Robert Half Int'l, Inc.*,
    413 F.3d 77 (D.C. Cir. 2005) ................................................................................... 11
13

14
*Cione v. Foresters Equity Servs., Inc.*,
    58 Cal. App. 4th 625 (1997) ..................................................................................... 5
15

*Circuit City Stores, Inc. v. Adams*,
16
    532 U.S. 105 (2001)..................................................................................................... 5

17
*Davis v. O'Melveny & Myers*,
18
    485 F.3d 1066 (9th Cir. 2007)................................................................................ passim

19
*Fittante v. Palm Springs Motors, Inc.*,
    105 Cal. App. 4th 708 (2003) ................................................................................... 11
20

*Gutierrez v. Autowest, Inc.*,
21
    114 Cal. App. 4th 77 (2003) ..................................................................................... 10

22
*Howsam v. Dean Witter Reynolds, Inc.*,
23
    537 U.S. 79 (2002)....................................................................................................... 7

24
*In re Mercury Constr. Corp.*,
    656 F.2d 933 (4th Cir. 1981)....................................................................................... 7
25

*Jones v. Humanscale Corp.*,
26
    130 Cal. App. 4th 401 (2005) ................................................................................... 10

27
*Little v. Auto Stiegler, Inc.*,
28
    29 Cal. 4th 1064 (2003) ............................................................................................ 10

Case No. 3:11-CV-00892-EMC
LEGAL_US_W # 68135615.8
    -ii-
    MEMO OF P&AS ISO
MOTION TO COMPEL ARBITRATION

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*McManus v. CIBC World Mkts. Corp.*,

4
    109 Cal. App. 4th 76 (2003) ................................................................. 10

5

*O'Malley v. Wilshire Oil Co.*,
    59 Cal. 2d 482 (1963) ........................................................................... 5

6

*O'Melveny & Myers v. Davis*,

7
    552 U.S. 1161 (2008) ........................................................................ 3, 8

8

*Perry v. Thomas*,
    482 U.S. 483 (1987) .............................................................................. 4

9

10

*Roman v. Superior Court*,
    172 Cal. App. 4th 1462 (2009) ........................................................... 10

11

*Saika v. Gold*,

12
    49 Cal. App. 4th 1074 (1996) ............................................................. 11

13

*Spellman v. Sec., Annuities & Ins. Servs., Inc.*,

14
    8 Cal. App. 4th 452 (1992) ................................................................... 4

15

*Szetela v. Discover Bank*,
    97 Cal. App. 4th 1094 (2002) ............................................................... 7

16

*Vianna v. Doctors' Mgmt. Co.*,

17
    27 Cal. App. 4th 1186 (1994) ............................................................... 5

18

**STATUTES**

19

9 U.S.C. §§ 1 *et seq.* ................................................................................. 1

20

9 U.S.C. § 2 ........................................................................................... 6, 8

21

9 U.S.C. § 3 .............................................................................................. 1

22

9 U.S.C. § 4 .............................................................................................. 1

23

Cal. Civ. Code § 1670.5(a) ....................................................................... 9

24

Cal. Civ. Code § 1709 ............................................................................. 12

25

Cal. Civ. Code § 1710(b) ........................................................................ 12

26

Cal. Civ. Code § 1710(c) ........................................................................ 12

27

28

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.**   <u>**INTRODUCTION**</u>

3    The United States Supreme Court recently underscored that the Federal Arbitration Act

4 (the "FAA"), 9 U.S.C. §§ 1 *et seq*., preempts *any* state-law rule that "stands as an obstacle to the

5 accomplishment and execution of the full purposes and objectives of Congress" in making

6 arbitration agreements enforceable.  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011)

7 (quotations and citation omitted).  "[S]tates cannot require a procedure that is inconsistent with

8 the FAA, even if it is desirable for unrelated reasons," the Supreme Court held.  *Id.* at 1753.

9 Instead, "courts must . . . enforce [arbitration agreements] according to their terms . . . ."  *Id.* at

10 1742.

11    *Concepcion* requires plaintiff Paulina Kanbar to arbitrate this dispute.  When Kanbar

12 started working for O'Melveny & Myers LLP ("OMM") in July 2006, she executed a written

13 Dispute Resolution Program Acknowledgement and Agreement ("DRP"), which calls for final

14 and binding arbitration of all disputes related to her employment.  Consistent with the DRP, on

15 January 15, 2010, Kanbar (represented by counsel) demanded arbitration of the same claims she

16 seeks to assert in court only now in the instant action, and stipulated to arbitration before JAMS

17 on July 27, 2010.  Many months later, Kanbar abruptly refused to continue arbitrating in favor of

18 pursuing this civil lawsuit.  By doing so, she improperly disregards the DRP and its requirement

19 that arbitration be governed by the FAA.

20    Kanbar contends that the Ninth Circuit Court's decision in *Davis v. O'Melveny & Myers*,

21 485 F.3d 1066 (9th Cir. 2007), rendered the DRP unconscionable and invalid such that she is no

22 longer bound by her agreement to arbitrate her claims.  *Davis*, however, was based entirely on

23 California anti-arbitration rules, which *Concepcion* makes clear are preempted by the FAA.

24    *Concepcion* requires that arbitration agreements such as the DRP be enforced "according

25 to their terms."  131 S. Ct. at 1742.  Accordingly, OMM requests that the Court issue an order:

26 (1) compelling Kanbar to arbitrate her dispute with OMM pursuant to the FAA, 9 U.S.C. § 4; and

27 (2) staying this action pending the completion of arbitration, 9 U.S.C. § 3.

28

1    II.    **FACTUAL BACKGROUND**

2          A.    **Upon Her Hiring, Kanbar Agreed To Arbitrate Employment-Related**
3                **Disputes.**

4          Kanbar started working for OMM as a regular employee in July 2006.  (Complt., ¶ 5.)  As

5    a condition of her employment, she signed the DRP on July 10, 2006.  (*Id.*, ¶ 17; Stofferahn

6    Decl., ¶ 2, Exh. A.)  The DRP provides a four-step program for resolving disputes between the

7    employee and OMM and states in relevant part:

8                    [Plaintiff] and [OMM] hereby consent to the resolution by private
                     arbitration of all claims or controversies, past, present or future, for
9                    which a court otherwise would be authorized by law to grant relief,
                     in any way arising out of, relating to, or associated with your
10                   employment with the Firm or the termination of your
                     employment . . . .
11

12   (Stofferahn Decl., ¶ 2, Exh. B, p. 2.)

13         B.    **Kanbar's Claims Fall Within The DRP.**

14         Kanbar was terminated on March 6, 2009, as part of a firm-wide reduction-in-force

15   affecting the employment of almost 200 employees of OMM.  (*See* Complt., ¶ 16.)  Subsequently,

16   Kanbar claimed that she had suffered a sexually hostile work environment and retaliation.

17   (Stofferahn Decl., ¶ 11.)  Kanbar filed the instant action on February 24, 2011.  (*See* Docket

18   No. 1.)  Kanbar's claims relate to her employment and therefore are covered by the DRP.

19         C.    **Kanbar Participated In Mediation And Stipulated To Arbitration, Both**
                 **Consistent With The DRP, But Later Refused To Continue, Citing The Ninth**
20               **Circuit Court's Decision In *Davis*.**

21         Under the DRP, the parties participated in a full day of mediation in November 2009

22   before a mediator suggested by Kanbar's counsel, at OMM's expense.  (Stofferahn Decl., ¶ 11,

23   Exh. H, p. 2.)  The mediation was unsuccessful.  (*Id.*, ¶ 11.)

24         On January 15, 2010, consistent with the DRP, Kanbar demanded arbitration.  (Stofferahn

25   Decl., ¶ 8, Exh. F.)  Arbitration proceedings were delayed, in part, because Kanbar changed

26   representation in March 2010.  (*Id.*, ¶ 8.)  The parties took time to select a mutually-agreeable

27   arbitrator; from February 2010 until June 17, 2010 (thereby exceeding the time limits specified in

28

1    the DRP), the parties exchanged lists of almost two dozen potential arbitrators, until finally

2    selecting an arbitrator who was available.  (*Id.*, ¶¶ 8-9.)

3         Kanbar initiated a Demand for Arbitration with JAMS on July 27, 2010.  (*Id.*, ¶ 3, Exh. C;

4    *see* Complt., ¶ 21.)  On that same day, the parties, through their respective counsel, stipulated to

5    arbitration before JAMS and selected the Hon. Walter P. Capacciolo (Ret.) as their arbitrator.

6    (Stofferahn Decl., ¶ 4, Exh. D; *see* Complt., ¶ 21.)  The stipulation stated: "It is stipulated and

7    agreed by the Parties to submit all disputes, claims or controversies to neutral, binding arbitration

8    at JAMS, pursuant to the JAMS Arbitration Administrative Policies . . . ."  (Stofferahn Decl., ¶ 4,

9    Exh. D.)  JAMS notified the parties on August 6, 2010, that it conducted a thorough review of the

10   DRP, determined that it satisfied the JAMS Policy on Employment Arbitration Minimum

11   Standards of Procedural Fairness, and stated that the Minimum Standards apply notwithstanding

12   any contrary provisions of the DRP and that "[t]he parties' agreement to proceed constitute[d]

13   your agreement to the foregoing."  (*Id.*, ¶ 5, Exh. E.)

14        In preparation for the hearing (slated to begin on February 11, 2011, after a request by

15   Kanbar to push back the original January hearing date for personal reasons), OMM provided

16   substantial document discovery and agreed to depositions of several OMM employees.  (*Id.*, ¶ 10-

17   11, Exh. H, p. 2.)  After three months of arbitration proceedings with JAMS, Kanbar suddenly

18   cancelled the deposition of an OMM partner on November 19, 2010.  Despite making a demand

19   and stipulating to arbitration, Kanbar refused to reschedule the deposition or continue with

20   arbitration before JAMS on November 29, 2010, and threatened to file suit, claiming that the

21   Ninth Circuit Court's decision in *Davis v. O'Melveny & Myers*, 485 F.3d 1066 (9th Cir. 2007),

22   released her from any obligation to continue with arbitration.  (*Id.*, ¶ 10, Exh. G; *see* Complt.,

23   ¶¶ 20-21.)[1]

24

25

26   _____

     [1] In *Davis*, the Ninth Circuit Court held that the DRP was procedurally and substantively
     unconscionable under California law, as applied to collective action wage-and-hour claims.  485

27   F.3d at 1084.  OMM timely appealed the adverse ruling, but later withdrew its petition for
     certiorari when the case settled.  *See O'Melveny & Myers v. Davis*, 552 U.S. 1161 (2008).  No

28   court has ordered OMM to discontinue use of the DRP.

1

D.      **OMM Has Not Previously Moved To Compel Arbitration.**

2

When Kanbar refused to go forward with the arbitration after the November 29 letter,

3

despite OMM's attempts to go forward, OMM had no choice but to inform JAMS that the

4

arbitration proceedings would be cancelled to avoid OMM's incurring (at its sole expense) the

5

substantial, approximately $17,000 non-refundable fee for four days of hearing reserved.

6

(Stofferahn Decl., ¶ 11, Exh. H, p. 4; *see also id*, Exh. I, J.)  OMM reserved its right to move to

7

compel arbitration and requested that Kanbar notify OMM by December 20, 2010, if Kanbar still

8

wanted to proceed with arbitration.  (*Id.*)  After no response, on December 24, 2010, OMM

9

cancelled the scheduled arbitration hearing.  (*Id.*, ¶ 11, Exh. I; *see* Complt., ¶ 21.)  Several months

10

after refusing to go forward with the arbitration, Kanbar filed this action (*see* Docket No. 1), in

11

breach of the DRP.

12

III.     **THE COURT SHOULD COMPEL KANBAR TO LITIGATE THIS CASE IN THE FORUM TO WHICH THE PARTIES AGREED — ARBITRATION**

13

14

A.      **The FAA Protects Arbitration Contracts As A Matter Of Federal Law.**

15

Congress established a strong federal public policy in favor of arbitration in the FAA:

16

17

> [The FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.

18

> * * * *

19

20

> In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.

21

22

*Spellman v. Sec., Annuities & Ins. Servs., Inc.*, 8 Cal. App. 4th 452, 458 (1992) (citations and

23

internal quotations omitted); *see also Perry v. Thomas*, 482 U.S. 483, 489 (1987) (same).

24

This policy in favor of arbitration applies equally to the employment context.  As the

25

Supreme Court noted:

26

> We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context. . . .  Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation . . . .

27

28

1  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001) (citation omitted).

2      *Concepcion* reaffirmed the preemptive force of the FAA:

3          The FAA was enacted in 1925 in response to widespread judicial
           hostility to arbitration agreements. . . .  The overarching purpose of
4          the FAA, evident in the text of §§ 2, 3, and 4, is *to ensure the*
           *enforcement of arbitration agreements according to their terms* so
5          as to facilitate streamlined proceedings.

6  131 S. Ct. at 1745, 1748 (internal citations omitted; emphasis added).

7      **B.    Arbitration Agreements Are Presumed To Be Enforceable.**

8      Arbitration agreements carry a "heavy presumption" of validity:

9          [D]oubts as to whether an arbitration clause applies to a particular
           dispute are to be resolved in favor of sending the parties to
10         arbitration.  The court should order them to arbitrate unless it is
           clear that the arbitration clause cannot be interpreted to cover the
11         dispute.  *A heavy presumption weighs the scales in favor of*
           *arbitrability* . . . .
12

13 *Cione v. Foresters Equity Servs., Inc.*, 58 Cal. App. 4th 625, 642 (1997) (quotations and citation

14 omitted; emphasis added); *see also O'Malley v. Wilshire Oil Co.*, 59 Cal. 2d 482, 487 (1963)

15 (upholding order compelling arbitration; "Doubts as to whether the arbitration clause applies are

16 to be resolved in favor of coverage."); *Vianna v. Doctors' Mgmt. Co.*, 27 Cal. App. 4th 1186,

17 1189 (1994) ("'[A]rbitration agreements should be liberally interpreted' . . . .  'Doubts as to

18 whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending

19 the parties to arbitration.'") (citations omitted); *Bayscene Resident Negotiators v. Bayscene*

20 *Mobilehome Park*, 15 Cal. App. 4th 119, 127 (1993) ("Resolution of disputes by arbitration . . . is

21 strongly favored in this state and 'doubts concerning the scope of arbitrable issues are to be

22 resolved in favor of arbitration.'") (internal citations omitted).

23     **C.    _Concepcion_ Affirms That The FAA Preempts Any State-Law Rule That**
              **"Stands As An Obstacle" To Enforcing Arbitration Agreements "According**
24            **To Their Terms."**

25     *Concepcion* held that a state-law rule that "stands as an obstacle to the accomplishment

26 and execution of the full purposes and objectives of Congress . . . is preempted by the FAA." 131

27 S. Ct. at 1753 (quotation marks and citation omitted).  Directly at issue there was a rule of

28

1  California law prohibiting waiver of class actions.  But there can be no serious dispute that the

2  teaching of *Concepcion* is far broader.

3      The "overarching purpose of the FAA" is "*to ensure the enforcement of arbitration*

4  *agreements according to their terms* so as to facilitate streamlined proceedings." *Id*. at 1748

5  (emphasis added).  Parties to arbitration agreements have "discretion in designing arbitration

6  processes;" because "[a]rbitration is a matter of contract . . . the FAA requires courts to honor the

7  parties' expectations." *Id.* at 1749, 1752.  "We said that a court may not 'rely on the uniqueness

8  of an agreement to arbitrate as a basis for a state-law holding that enforcement would be

9  unconscionable, for this would enable the court to effect what . . . the state legislature cannot.'"

10  *Id*. at 1747 (alteration in original) (quoting *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987)).

11  While section 2 of the FAA provides a "saving clause" in the form of certain defenses to an

12  arbitration agreement, "nothing in it suggests an intent to preserve state-law rules that stand as an

13  obstacle to the accomplishment of the FAA's objectives." *Concepcion*, 131 S. Ct. at 1748.

14      Thus, the FAA preempts "state-law rules that stand as an obstacle to" enforcing arbitration

15  agreements.  *Id.*  Arbitration agreements may not be invalidated by "defenses that apply only to

16  arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."

17  *Id*. at 1746.  A state-law rule is preempted "even if it is desirable for unrelated reasons."  *Id*. at

18  1753.  For example, "parties may agree to limit the issues subject to arbitration, to arbitrate

19  according to specific rules, and to limit with whom a party will arbitrate its disputes . . . ."  *Id*. at

20  1748-49 (emphasis omitted) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,

21  473 U.S. 614, 628 (1985); *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford*

22  *Junior Univ.*, 489 U.S. 468, 479 (1989); and *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*,

23  130 S. Ct. 1758, 1774 (2010)).

24      **D.**    **The DRP Should Be Enforced Here.**

25      The DRP should be enforced here, particularly because of *Concepcion*.  In seeking to

26  compel arbitration, the moving party's burden is slight.  The movant need only prove, by a

27  preponderance of the evidence, that an agreement to arbitrate the claims exists and that the

28

1   respondent has breached the agreement.  *In re Mercury Constr. Corp.*, 656 F.2d 933 (4th Cir.
2   1981).

3          A motion to compel arbitration raises two threshold issues: (1) whether an enforceable
4   arbitration agreement exists between the parties; and (2) whether the purported claims at issue are
5   covered by the arbitration agreement.  *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79,
6   83-84 (2002).  Both conditions are satisfied here.

7                          **1.     Kanbar's claims are covered by the DRP.**

8          Under the DRP, Kanbar agreed to arbitrate "all claims or controversies, past, present, or
9   future, for which a court otherwise would be authorized to grant relief, in any way arising out of,
10  relating to, or associated with your employment with the Firm or the termination of your
11  employment."  (Stofferahn Decl., Exh. B, p. 2.)  The claims covered by the DRP include claims
12  for "personal injury, defamation or *other tort* claims; claims for discrimination, including but not
13  limited to discrimination based on race, *sex* . . . ."  (*Id.* (emphasis added).)  Therefore, the DRP
14  encompasses all disputes or claims related to Kanbar's employment with OMM.

15                         **2.     Under *Concepcion*, the DRP is a valid and enforceable arbitration
16                                  agreement under the FAA.**

17         Kanbar must arbitrate her claims in light of the Supreme Court's decision in *Concepcion*.
18  The Ninth Circuit Court in *Davis* made clear — and indeed, expressly stated twice — that its
19  holding was premised on California law: "the arbitration agreement is unconscionable under
20  *California law*."  *Davis*, 485 F.3d at 1070, 1084 (emphasis added).  In particular, by applying the
21  reasoning of the California Court of Appeal decision in *Szetela v. Discover Bank*, 97 Cal. App.
22  4th 1094 (2002), the Ninth Circuit Court found that the DRP was procedurally unconscionable
23  because it was a "take it or leave it" contract of adhesion.  485 F.3d at 1074.

24         Similarly, the Ninth Circuit Court's finding that the DRP was substantively
25  unconscionable was rooted in California rules for invalidating arbitration agreements.  For
26  example, the Ninth Circuit Court held that the DRP's notice provision was substantively
27  unconscionable based on certain decisions applying California law that struck down arbitration
28  agreements for shortened limitation periods.  *Id.* at 1076-77 (citing *Ingle v. Circuit City Stores*,

1    *Inc.*, 328 F.3d 1165 (9th Cir. 2003); *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101 (9th Cir.

2    2003); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889 (9th Cir. 2002); *Martinez v. Master Prot.*

3    *Corp.*, 118 Cal. App. 4th 107 (2004)).

4            *Concepcion* makes clear that the *Davis* analysis rests on faulty California law.  According

5    to *Concepcion*, the FAA preempts the California anti-arbitration rules upon which the *Davis*

6    decision was based.  *See* 131 S. Ct. at 1753.  The Supreme Court expressly rejected the *Discover*

7    *Bank* rule that class arbitration waivers are unconscionable because it "interferes with arbitration"

8    and "is limited to adhesion contracts."  *Id.* at 1750.  Just as "the times in which consumer

9    contracts were anything other than adhesive are long past," *id.*, arbitration agreements in the

10   employment context are likewise routine adhesive contracts that must be enforced.  Although

11   "States remain free to take steps addressing the concerns that attend contracts of adhesion,"

12   "[s]uch steps cannot, however, conflict with the FAA or frustrate its purpose to ensure that private

13   arbitration agreements are enforced according to their terms."  *Id.* n.6.  Arbitration agreements

14   under the FAA, such as the DRP, "shall be valid, irrevocable, and enforceable, save upon such

15   grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  After

16   *Concepcion*, there can be no question that the DRP is valid and enforceable under the FAA.

17              **3.      *Davis* in any event does not excuse Kanbar from arbitration.**

18           Kanbar's reliance on *Davis* is misplaced even apart from *Concepcion*.  OMM disagreed

19   with and challenged the *Davis* ruling in a petition for writ of certiorari to the United States

20   Supreme Court, but later withdrew the petition after the case resolved through a settlement.  *See*

21   *O'Melveny & Myers v. Davis*, 552 U.S. 1161 (2008).  No court ever issued an injunction barring

22   OMM from operating under the DRP.  Thus, Kanbar continues to be bound by the DRP she

23   expressly agreed to when she was hired.[2]

24   _____

25   [2] Additionally, the claims and facts in *Davis* are distinguishable from the instant case.  The claims
     in *Davis* involved alleged collective claims under the Fair Labor Standards Act and California's
26   Unfair Business Practices Act, whereas Kanbar here brings individual sex discrimination and
     related claims.  The plaintiff in *Davis* was already an employee when the DRP first was instituted,
27   whereas Kanbar became an employee almost four years after the DRP went into effect and there
     is no dispute she knowingly and expressly acknowledged and agreed to be bound by it when she
28   was hired.  (Stofferahn Decl., ¶ 2, Exh. A.)

1       Moreover, Kanbar arguably waived any right to raise the unconscionability defense once

2 she stipulated to proceed with arbitration before JAMS, and went forward with arbitration for

3 many months before unilaterally suspending it.  (*See also* discussion in Section III.D.5. below.)

4       The *Davis* decision has no bearing on the arbitrability of Kanbar's claims, even before —

5 but especially after — *Concepcion*.

6
7
### 4.   <u>Even assuming — erroneously, in OMM's view — that there were one or more unconscionable provisions in the DRP, the Court should sever them.</u>

8       Even if the Court somehow were to find one or more provisions in the DRP

9 unconscionable, and were to find that FAA preemption does not apply, even after *Concepcion*,

10 the appropriate remedy here would be to sever those provisions and enforce the rest of the

11 agreement.  "It is not necessary to throw the [arbitration] baby out with the bath water, i.e., the

12 unconscionable provisions can be severed and the rest of the agreement enforced." *Bolter v.*

13 *Superior Court*, 87 Cal. App. 4th 900, 910 (2001).

14       California Civil Code section 1670.5(a) explicitly sets forth a court's options after making

15 a finding of unconscionability:

16
17
18
> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court . . . *may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result*.

19 Cal. Civ. Code § 1670.5(a) (emphasis added).   In *Armendariz v. Foundation Health Psychcare*

20 *Services, Inc.*, 24 Cal. 4th 83 (2000), the court considered the severability of unconscionable

21 provisions, and, after quoting section 1670.5(a), turned to comments from the Legislative

22 Committee for further guidance.  The court explained:

23
24
25
26
> Under this section the court, in its discretion, may refuse to enforce the contract as a whole *if it is permeated by the unconscionability*, or it may strike any single clause or group of clauses which are so tainted or which are contrary to the essential purpose of the agreement, or it may simply limit unconscionable clauses so as to avoid unconscionable results.

27
28
> Thus, the statute appears to give a trial court some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement. *But it also appears to*

1

2

*contemplate the latter course only when an agreement is
"permeated" by unconscionability.*

3    *Id.* at 122 (emphases added; citations and internal quotation marks omitted).

4            Where possible, courts therefore have severed or limited unconscionable arbitration

5    provisions and enforced the rest of the arbitration agreement.  For example, in *Roman v. Superior*

6    *Court*, 172 Cal. App. 4th 1462 (2009), the court considered an allegation that an agreement's

7    costs provision rendered it unconscionable.  The court rejected the argument, noting that even if

8    the provision were unconscionable, "it would not provide a basis to void the arbitration

9    agreement" because the offending provision should have been severed.  *Id.* at 1477.  "[T]he

10   strong legislative and judicial preference is to sever the offending term and enforce the balance of

11   the agreement . . . ."  *Id.*  This is not a matter of judicial discretion; "[a]lthough 'the statute

12   appears to give a trial court some discretion,'" that discretion exists "only when an agreement is

13   'permeated' by unconscionability."  *Id.* (quoting *Armendariz*, 24 Cal. 4th at 122).  "[W]e have

14   little difficulty concluding the interests of justice would be furthered by severance of the

15   [offending] provision, which, if unconscionable . . . , is plainly 'collateral to the main purpose of

16   the contract.'"  *Id.* at 1478 (quoting *Armendariz*, 24 Cal. 4th at 124).

17           Other cases are to the same effect.  *E.g.*, *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064,

18   1074, 1075-76 (2003) (severing no-appeal provision and finding arbitration agreement "valid and

19   enforceable once the unconscionable appellate arbitration provision [was] deleted"; severability

20   was necessary in order to give effect to the parties' intent to arbitrate and to "'prevent parties

21   from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the

22   entire agreement . . .'") (citations omitted); *Jones v. Humanscale Corp.*, 130 Cal. App. 4th 401,

23   416-17 (2005) (reversing a trial court that had declined to sever an unconscionable provision);

24   *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 92 (2003) (severing arbitration fees-and-costs

25   provisions and enforcing the balance of the agreement; the central purpose of the arbitration

26   agreement "was not to regulate costs, but to provide a mechanism to resolve disputes [and]

27   [b]ecause the costs provision is collateral to that purpose, severance was available"); *McManus v.*

28   *CIBC World Mkts. Corp.*, 109 Cal. App. 4th 76, 102 (2003) (reversing order denying petition to

1   compel arbitration and directing new order granting motion to compel arbitration; requirement

2   that employee pay certain arbitration fees may be severed because arbitration agreement was not

3   "so 'permeated' with unconscionable provisions that it cannot be saved") (citations omitted);

4   *Fittante v. Palm Springs Motors, Inc.*, 105 Cal. App. 4th 708, 727 (2003) (severing limitation-on-

5   appeals provision and enforcing agreement); *Saika v. Gold*, 49 Cal. App. 4th 1074, 1082 (1996)

6   (severing and enforcing an agreement that conferred a right to challenge an arbitration award

7   above $25,000); *Beynon v. Garden Grove Med. Group*, 100 Cal. App. 3d 698, 713 (1980)

8   (severing and enforcing agreement that conferred on a medical group the unilateral right to

9   challenge an arbitration award); *see also Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 86 (D.C.

10  Cir. 2005) (Roberts, J.) (enforcing arbitration agreement after severing provision precluding

11  punitive damages; severance is consistent with policy that "requires that we rigorously enforce

12  agreements to arbitrate") (citations and internal quotation marks omitted).

13          Although the Ninth Circuit Court held that certain provisions of the DRP could not be

14  severed in *Davis* under wholly different circumstances, that fact does not mean that any offending

15  terms could not be severed here, now as applied to Kanbar.  The holding concerning the inability

16  to sever in *Davis* was rooted in the fact that the court held the DRP to be procedurally

17  unconscionable due to it being an adhesion contract, which, coupled with the substantively

18  unconscionable provisions, rendered the entire contract unconscionable.  *See* 485 F.3d at 1073-

19  75.  Based on *Concepcion*, *Davis* was erroneously decided because any state-law rule designed to

20  address adhesion contracts cannot prevent the enforcement of an arbitration agreement according

21  to its terms.  131 S. Ct. at 1750 n.6.  But at a bare minimum, this Court must review the DRP

22  anew to determine severability.

23          In sum, even if the Court were to find one or more provisions of the DRP to be

24  unconscionable, it should nevertheless salvage the agreement by severing those provisions and

25  enforcing the remainder of the agreement.

26

27

28

1

2

**5.      In the alternative, Kanbar stipulated to proceed with arbitration before JAMS and is bound by that stipulation.**

3        Even aside from the DRP, however, Kanbar, voluntarily and through counsel, stipulated

4  and agreed to binding arbitration before JAMS on July 27, 2010.  (Stofferahn Decl., Exh. D.)  She

5  then went forward with arbitration before JAMS for many months, including engaging in

6  substantial discovery, before abruptly and unilaterally suspending the arbitration, and violating

7  that post-dispute agreement by refusing to participate in any further arbitration proceedings

8  before JAMS on November 29, 2010.  (Stofferahn Decl., Exh. F.)  During that entire time that the

9  JAMS arbitration was proceeding from August through November 2010, neither Kanbar nor her

10  counsel raised any concern that Kanbar or her claims were being treated unfairly or

11  unconscionably in any way.  (*Id.*, ¶ 10; *see also id.*, ¶ 11, Exh. H.)  The Court should enforce the

12  parties' stipulation and compel Kanbar to return to arbitration.

13        Kanbar likely will contend that she is excused from her stipulation because OMM

14  fraudulently induced her into participating in the JAMS arbitration.  This claim is wholly without

15  merit.  The tort of fraudulent deceit requires one to "willfully" deceive another.  Cal. Civ. Code

16  § 1709.  Deceit requires, among other things, assertion of a false statement "by one who has no

17  reasonable ground for believing it to be true" or suppression of a fact "by one who is bound to

18  disclose it."  Cal. Civ. Code § 1710(b), (c).

19        OMM never intentionally misrepresented the validity of the DRP, and in good faith

20  maintains that the DRP is valid.  Even if this Court were to find that the DRP is now

21  unenforceable, that would not change the fact that at the time the parties agreed to arbitrate before

22  JAMS, OMM had reasonable grounds for believing it could continue operating under the DRP.

23  (*See* discussion in Section III.D.3. above regarding inapplicability of *Davis*.)  In particular, OMM

24  never intentionally concealed the existence of the *Davis* decision, which involved another

25  employee and is a matter of public record, published in the federal reporters.  Kanbar's claim of

26  fraudulent inducement thus falls flat.

27

28

1          As set forth above, the DRP is valid and should be enforced to compel Kanbar to arbitrate.

2  In the alternative, and regardless of the validity of the DRP, the Court should hold Kanbar to her

3  post-*Davis* stipulation to arbitrate.

4

## IV.    <u>CONCLUSION</u>

5          For the foregoing reasons, OMM respectfully requests that this Court grant its motion to

6  compel plaintiff to bring her claims through arbitration, and to stay this action pending the

7  completion of arbitration.

8

9  DATED:  June 7, 2011          PAUL W. CANE, JR.

10                     KATHERINE C. HUIBONHOA
                        Y. ANGELA LAM

11                     PAUL, HASTINGS, JANOFSKY & WALKER LLP

12

13                   By:              /s/ Katherine C. Huibonhoa
                              KATHERINE C. HUIBONHOA

14

15                   Attorneys for Defendant
                   O'MELVENY & MYERS LLP

16

17

18

19

20

21

22

23

24

25

26

27

28