**United States District Court**
For the Northern District of California

1
2
3
4
5                           UNITED STATES DISTRICT COURT
6                          NORTHERN DISTRICT OF CALIFORNIA
7
8    PAULINA KANBAR,                          No. C-11-0892 EMC
9              Plaintiff,
10        v.                                  **ORDER GRANTING DEFENDANT'S**
                                              **MOTION TO COMPEL ARBITRATION**
11   O'MELVENY & MYERS,                       **(Docket No. 9)**
12             Defendant.
                                        /
13   _____
14
15        Plaintiff Paulina Kanbar has filed suit against Defendant O'Melveny & Myers ("OMM"),
16   asserting claims for, *inter alia*, fraud, retaliation, sex discrimination, and failure to prevent
17   discrimination.  Ms. Kanbar brings both class claims as well as individual claims.  The class claims
18   are predicated on OMM's alleged failure to inform its employees that, in *Davis v. O'Melveny &*
19   *Myers*, 485 F.3d 1066 (9th Cir. 2007), the Ninth Circuit deemed OMM's arbitration agreement
20   (known as the Dispute Resolution Program ("DRP")) unenforceable due to unconscionability.  The
21   individual claims are the retaliation and discrimination claims.  Currently pending before the Court
22   is OMM's motion to compel arbitration.  OMM's basic argument is that, even though the Ninth
23   Circuit found its DRP unconscionable in *Davis*, *Davis* is no longer good law in light of the Supreme
24   Court's recent decision in *AT&T v. Concepcion*, 131 S. Ct. 1740 (2011), and therefore Ms. Kanbar
25   should be compelled to arbitration consistent with the DRP.
26        Having considered the parties' briefs and accompanying submissions, as well as the oral
27   argument of counsel, the Court hereby **GRANTS** the motion to compel.  While the Court disagrees
28

1  with OMM that *Concepcion* overrules *Davis*, it agrees that Ms. Kanbar waived her right to a judicial

2  forum.

3                              **II.   DISCUSSION**

4  A.      *Davis* and *Concepcion*

5          Because *Davis* and *Concepcion* are the critical cases here, the Court begins its analysis by

6  providing a brief overview of each case.

7          1.      *Davis*

8          In *Davis*, the plaintiff filed a class action against OMM for violations of the Fair Labor

9  Standards Act ("FLSA") and other state and federal labor statutes.  The plaintiff claimed that OMM

10 had failed to pay for overtime and denied rest and meal periods.  *See Davis*, 485 F.3d at 1070.

11 OMM moved to compel arbitration based on the DRP (the same arbitration agreement at issue in the

12 case at bar).  The Ninth Circuit concluded that the DRP was unenforceable:

13              Under California law, a contractual clause is unenforceable if it
               is both procedurally and substantively unconscionable.  Courts apply a
14             sliding scale: "the more substantively oppressive the contract term, the
               less evidence of procedural unconscionability is required to come to
15             the conclusion that the term is unenforceable, and vice versa.."  Still,
               "both [must] be present in order for a court to exercise its discretion to
16             refuse to enforce a contract or clause under the doctrine of
               unconscionability."

17

18 *Id.* at 1072.

19         The court first found that the DRP was procedurally unconscionable because – even though

20 there were no facts of adhesion such as surprise or concealment – it was, in essence, a "take it or

21 leave it" condition of employment, *i.e.*, if an employee did not agree to arbitrate, then his or her only

22 option was to leave and work somewhere else.  *See id.* at 1073.

23         Second, the court found that DRP had four problematic provisions that were substantively

24 unconscionable.

25         (a)     The Notice Provision.  This provision gave an employee only one year within which

26 to give notice from when any claim was known to him or her or with reasonable effort should have

27 been known to him or her.  The court noted that this amounted to a one-year statute of limitations

28 and that it had previously found such shortened limitations periods to be substantively

United States District Court

For the Northern District of California

2

1  unconscionable in other cases.  The court further noted that shortened limitations periods were

2  especially troubling with respect to employment-related statutory claims because they would

3  effectively bar an employee from relying on a continuing violations theory.  *See id.* at 1076-77.

4      (b)    The Confidentiality Provision.  This provision barred an employee from mentioning

5  to anyone not directly involved in the mediation or arbitration what took place during the arbitration

6  or even the fact that the arbitration existed in the first place.  The Ninth Circuit pointed out that

7  these restrictions would prevent an employee from contacting other
employees to assist in litigating (or arbitrating) an employee's case.

8  An inability to mention even the existence of a claim to current or
former [OMM] employees would handicap if not stifle an employee's

9  ability to investigate and engage in discovery.  The restrictions would
also place [OMM] "in a far superior legal posture" by preventing

10  plaintiffs from accessing precedent while allowing [OMM] to learn
how to negotiate and litigate its contracts in the future.  Strict

11  confidentiality . . . could also prevent others from building cases.  It
might even chill enforcement of Cal. Labor § 232.5, which forbids

12  employers from keeping employees from disclosing certain 'working
conditions' and from retaliating against employees who do so.

13

14  *Id.* at 1078-79.  The court acknowledged that confidentiality provisions in an arbitration agreement

15  are not per se unconscionable but, here, the DRP's confidentiality provision was "written too

16  broadly."  *Id.* at 1079.

17      (c)    The Provision Exempting OMM from Arbitration.  Under the DRP, OMM was

18  exempted from arbitration – *i.e.*, could seek judicial relief – for claims by the firm for injunctive or

19  other equitable relief based on violations of the attorney-client privilege or the work product

20  doctrine or based on the disclosure of other confidential information.  The Ninth Circuit noted that,

21  under California law, it was permissible for an employer to preserve a judicial remedy for itself

22  based upon a legitimate commercial need or business reality.  *See id.* at 1080.  While "a provision

23  allowing a law firm immediate access to a court for a limited purpose of seeking injunctive relief to

24  protect confidential attorney-client information could constitute a legitimate business justification,"

25  here, the provision was far broader – allowing OMM to seek other equitable relief for simply the

26  disclosure of other confidential information.  *Id.* at 1081.  "'California courts have routinely rejected

27  [protecting proprietary information] as a legitimate basis for allowing only one party to an

28  agreement access to the courts for provisional relief.'"  *Id.*

United States District Court

For the Northern District of California

(d)     Ban on Administrative Actions.  Finally, the DRP had a provision that precluded claims to an administrative agency (other than claims to the Equal Employment Opportunity Commission ("EEOC") or a comparable state agency for discrimination).  The Ninth Circuit noted first that the provision was void because, under California law, certain "public injunctions" are incompatible with arbitration and therefore actions seeking such injunctions cannot be subject to arbitration even under a valid arbitration clause.  *See id.* at 1080, 1082.  The court went on to explain that the provision was also void because the "all-inclusive bar to administrative actions (even given the listed exceptions . . . ) is contrary to U.S. Supreme Court and California Supreme Court precedent."  *Id.* at 1082.  More specifically, under this precedent, claims to the EEOC or, *e.g.*, California Department of Fair Employment and Housing ("DFEH") had to be exempted because their "enforcement scheme relies upon individual complaints.  'Consequently, courts have observed that an individual may not contract away her right to file a charge with the EEOC.'"  *Id.* at 1083.  The same reasoning was applicable to Department of Labor and FLSA complaints: "such complaints may not be waived with an arbitration clause because the statutory scheme is premised on an employee's willingness to come forward, in support of the public good."  *Id.*

Because the DRP was both procedurally unconscionable and had four substantively unconscionable or void provisions, the Ninth Circuit concluded that severance of the offending provisions was not appropriate.  "These provisions cannot be stricken or excised without gutting the agreement."  *Id.* at 1084.

2.     *Concepcion*

In *Concepcion*, the Supreme Court addressed the validity of a rule articulated by the California Supreme Court in *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005).

In *Discover Bank*, the California Supreme Court held that an arbitration agreement that is part of a consumer contract and that contains a class-action waiver is, as a general matter, unconscionable.  The court stated:

> We do not hold that all class action waivers are necessarily unconscionable.  But when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried

**United States District Court**
For the Northern District of California

1   out a scheme to deliberately cheat large numbers of consumers out of
    individually small sums of money, then, at least to the extent the
2   obligation at issue is governed by California law, the waiver becomes
    in practice the exemption of the party "from responsibility for [its]
3   own fraud, or willful injury to the person or property of another."
    Under these circumstances, such waivers are unconscionable under
4   California law and should not be enforced.

5   *Id.* at 162-63.

6       In *Concepcion*, the Supreme Court addressed the issue of whether the Federal Arbitration

7   Act ("FAA") preempted the *Discover Bank* rule. *See Concepcion*, 131 S. Ct. at 1746. The Court

8   held the rule was preempted because "[r]equiring the availability of classwide arbitration interferes

9   with *fundamental attributes of arbitration* and thus creates a scheme inconsistent with the FAA." *Id.*

10  at 1748 (emphasis added). In particular:

11  •   "First, the switch from bilateral to class arbitration sacrifices the principal advantage of

12  arbitration – its informality – and makes the process slower, more costly, and more likely to generate

13  procedural morass than final judgment." *Id.* at 1751.

14  •   "Second, class arbitration requires procedural formality. . . . If procedures are too informal,

15  absent class members would not be bound by the arbitration." *Id.* at 1751 (emphasis in original).

16  •   "Third, class arbitration greatly increases risks to defendants. . . . Defendants are willing to

17  accept the costs of [uncorrected] errors in arbitration, since their impact is limited to the size of

18  individual disputes, and presumably outweighed by savings from avoiding the courts. But when

19  damages allegedly owed to tens of thousands of potential claimants are aggregated and decided at

20  once, the risk of an error will often become unacceptable. Faced with even a small chance of a

21  devastating loss, defendants will be pressured into settling questionable claims." *Id.* at 1752. In

22  short, "[a]rbitration is poorly suited to the higher stakes of class litigation." *Id.*

23  B.  Collateral Estoppel

24      Having provided summaries of the holdings in *Davis* and *Concepcion*, the Court turns to the

25  arguments made by the parties based on each case. The Court addresses first Ms. Kanbar's

26  argument that collateral estoppel bars OMM from challenging the validity of the *Davis* decision.

27  Because *Davis* is a federal decision, "federal law controls the collateral estoppel analysis."

28  *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1096 (9th Cir. 2004). Under federal law,

> [t]hree factors must be considered before applying collateral estoppel: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action.

*Id.* (internal quotation marks omitted).

In the instant case, OMM argues that collateral estoppel is not applicable because the issue at stake here is not identical to the one in *Davis*. More specifically, OMM contends that the issue at stake is not identical (1) because of an intervening change in the law, *i.e.*, *Concepcion*, and (2) because of a difference in material facts. *See Bobby v. Bies*, 129 S. Ct. 2145, 2152 (2009) (noting that, "even where the core requirements of issue preclusion are met, an exception to the general rule may apply when a 'change in [the] applicable legal context' intervenes"); *Montana v. United States*, 440 U.S. 147, 159 (1979) (stating that "changes in facts essential to a judgment will render collateral estoppel inapplicable in a subsequent action raising the same issues").

The Court concurs with OMM that *Concepcion* is a significant change in the law on arbitration, thus justifying relitigation of the DRP's enforceability – "even if [this] change [in the law] might not ultimately result in a different outcome on the merits of the [DRP's enforceability]." 18-132 Moore's Fed. Prac. – Civ. § 132.02[2][f][ii].

Moreover, as OMM further asserts, there is a difference in material facts. The difference in facts is, in essence, a difference in claims: in *Davis*, the plaintiff asserted wage-and-hour claims whereas, here, Ms. Kanbar asserts retaliation and discrimination claims. This is a material difference because, in *Davis*, the Ninth Circuit found the provision limiting the initiation of administrative actions void because it barred the plaintiff from making an administrative claim before the U.S. Department of Labor and the California Labor Commissioner. Furthermore, the Ninth Circuit ultimately declined not to sever because there were four substantively unconscionable or void provisions – including this provision. As OMM points out, in the instant case, the provision limiting the initiation of administrative actions has no application to Ms. Kanbar because the provision at issue here carved out an exception for claims to the EEOC or DFEH for discrimination.

*Syverson v. International Business Machines Corp.*, 472 F.3d 1072 (9th Cir. 2007), underscores that the above is a difference in material facts that makes collateral estoppel inapplicable.  In *Syverson*, the plaintiffs were former employees of IBM who had signed a general release and covenant not to sue with IBM.  The issue for the Ninth Circuit was whether, by signing the agreement, the employees had knowingly and voluntarily waived their rights or claims arising under the Age Discrimination in Employment Act ("ADEA").  In an earlier case (*Thomforde II*), the Eighth Circuit had considered an identical agreement and concluded that there was no knowing and voluntary waiver.  The employees argued to the Ninth Circuit that IBM was collaterally estopped by the Eighth Circuit decision from relitigating the waiver issue.  IBM in turn argued that the Eighth Circuit decision could not have any preclusive effect because it rested on two grounds – (1) the lack of clarity in the agreement and (2) IBM's declination to tell the Thomforde II plaintiff what it meant by the language – the second of which was particular to the *Thomforde II* plaintiff and absent from the Ninth Circuit case.  *See id.* at 1081.

The Ninth Circuit agreed with IBM.  It acknowledged that

> [i]t is far from clear exactly what significance the *Thomforde II* panel gave to IBM's refusal to clarify the . . . Agreement.  The bulk of the opinion is devoted to explaining why the language of the agreement lacks clarity.  The significance of IBM's refusal to explain the terms of the agreement to Thomforde is not analyzed.  Nevertheless, the Eighth Circuit did point to that refusal in its final summary of the grounds for its decision.  That being so, we cannot conclude that this distinct set of facts, applicable to the individual plaintiff in Thomforde but not to the named plaintiffs or the putative class in this case, had no role in the Eighth Circuit's ultimate conclusion that the waiver was invalid.

> We note that *Thomforde II* stated, in no uncertain terms, that clarification outside the scope of the . . . Agreement would not satisfy the strict requirements of the [Older Workers Benefit Protection Act].  It is, therefore, rather unlikely that IBM's declination to clarify the agreement played a material role in the Eighth Circuit's determination.  With no way to verify this hunch, however, we decline to so assume.

> Because the Eighth Circuit's reasoning did not end with analysis of the language of the . . . Agreement, but instead, expressly took into account facts specific to the individual plaintiff in that case, we conclude that the issues are not sufficiently identical between that case and this one for offensive nonmutual issue preclusion to apply.

United States District Court

For the Northern District of California

1  *Id.* In effect, the court resolved any doubt about whether the issues were sufficiently identical

2  against the application of collateral estoppel.

3  　　　The situation here is analogous to that in *Syverson*. In *Davis*, the Ninth Circuit found the

4  DRP unenforceable based on four provisions but, in the instant case, one of those grounds is missing

5  – *i.e.*, the fourth provision is not applicable to Ms. Kanbar. Accordingly, because there has been a

6  change in the law and the issues are not identical, the Court concludes that collateral estoppel does

7  not apply. The Court thus turns to the merits of the arguments on unconscionability.

8  C.　　Unconscionability

9  　　　Ms. Kanbar argues that, even if collateral estoppel does not bar OMM from challenging

10  *Davis*, the DRP is still unconscionable for essentially the same reasons why the Ninth Circuit found

11  it unconscionable in *Davis*.

12  　　　To the extent OMM asserts that *Concepcion* precludes a challenge to an arbitration

13  agreement on the basis of unconscionability, the Court disagrees. In *Concepcion*, the Supreme

14  Court specifically noted that the FAA "permits agreements to arbitrate to be invalidated by

15  'generally applicable contract defenses, such as fraud, duress, or unconscionability,' [although] not

16  by defenses that apply only to arbitration or that derive their meaning from the fact that an

17  agreement to arbitrate is at issue." *Concepcion*, 131 S. Ct. at 1746. In short, arbitration agreements

18  are still subject to unconscionability analysis. For the same reasons, the Court rejects OMM's

19  contention that a challenge to an arbitration agreement must be rejected if it means that the

20  agreement will not be enforced according to its terms. The doctrine of unconscionability can

21  override the terms of an arbitration agreement and the parties' expectations in connection therewith.

22  　　　The Court thus examines whether the DRP provisions that the Ninth Circuit found

23  unconscionable in *Davis* are applicable here. As noted above, one of the provisions – *i.e.*, the

24  provision that precluded claims to an administrative agency – is not applicable here. But the

25  remaining three provisions – *i.e.*, the notice provision, the confidentiality provision, and the

26  provision exempting OMM from arbitration – are problematic.[1] And for the reasons discussed by the

27  ————————
[1] At the hearing, OMM argued for the first time that the notice provision is not applicable in
28  the instant case because, under FEHA, a complainant must file an administrative charge within one
year after the alleged unlawful practice occurred, *see* Cal. Gov't Code § 12960(d), and the DRP

8

Ninth Circuit in *Davis*, each of these provisions is unconscionable.  The Court so concludes based

on *Davis*' precedence on these points as well as the persuasiveness of its analysis of each provision.

That the terms are substantively unconscionable is not dispositive; there must also be

procedural unconscionability.  *See Gentry v. Superior Court*, 42 Cal. 4th 443, 469 (2007) (noting

that "[t]he prevailing view is that [procedural and substantive unconscionability] must both be

present in order for a court to exercise its discretion to refuse to enforce a contract or clause under

the doctrine of unconscionability") (internal quotation marks omitted).  As in *Davis*, as discussed

above, the Ninth Circuit found procedural unconscionability because the DRP was essentially a

take-it-or-leave-it condition of employment.  That reasoning is equally applicable here.

To the extent OMM argues that, under *Concepcion*, "any state-law rule designed to address

adhesion contracts cannot prevent enforcement of an arbitration agreement according to its terms,"

Mot. at 11 (citing footnote 6 of *Concepcion*), the Court disagrees.  First, the procedural

unconscionability found in *Davis* alone is not dispositive; it is but one necessary but insufficient

element of overall unconscionability analysis.  Second, OMM has not accurately characterized what

the Supreme Court stated in footnote 6 of *Concepcion*.  There, the Supreme Court actually stated as

follows:

> Of course States remain free to take steps addressing the
> concerns that attend contracts of adhesion – for example, requiring
> class-action-waiver provisions in adhesive arbitration agreements to be
> highlighted.  Such steps cannot, however, *conflict with the FAA or
> frustrate its purpose* to ensure that private arbitration agreements are
> enforced according to their terms.

_____

likewise has a one-year limitations period.

But this argument misses the point.  While it is true that a complainant must file an administrative charge within one year under FEHA, FEHA also provides that, once the DFEH issues a right-to-sue letter, then the complainant has another year to file suit.  *See id.* § 12965(b).  Thus, the structure set up by the DRP and that set up by FEHA differ.  Because of the DRP, an individual could not wait to see what would happen with respect to his or her administrative charge; he would have to notify OMM within a year or otherwise lose his or her rights.

Moreover, the Court notes that, in the instant case, Ms. Kanbar is not simply bringing claims under FEHA.  She is also bringing claims for fraud, which have a three-year statute of limitations. *See* Cal. Code Civ. Proc. § 338(d).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  *Concepcion*, 131 S. Ct. at 1750 n.6 (emphasis added). OMM has omitted the critical language

2  italicized above which implies that: not all state law concerns that attend contracts of adhesion are

3  preempted.

4      Accordingly, the Court concludes, consistent with *Davis*, that the DRP is both procedurally

5  and substantively unconscionable, and that the three substantively unconscionable provisions are

6  unenforceable under California law.

7      OMM contends that, even if the Court so holds, it is still possible to sever the substantively

8  unconscionable provisions and allow arbitration to proceed. Severance with respect to an

9  unconscionable contract is governed by California Civil Code § 1670.5(a). It provides as follows:

> If the court as a matter of law finds the contract or any clause of the
> contract to have been unconscionable at the time it was made the court
> may refuse to enforce the contract, or it may enforce the remainder of
> the contract without the unconscionable clause, or it may so limit the
> application of any unconscionable clause as to avoid any
> unconscionable result.

14  Cal. Civ. Code § 1670.5(a). The 1979 Legislative Committee comments note that, "[u]nder this

15  section the court, in its discretion, may refuse to enforce the contract as a whole if it is *permeated* by

16  the unconscionability, or it may strike any single clause or group of clauses which are so tainted or

17  which are contrary to the essential purpose of the agreement, or it may simply limit unconscionable

18  clauses so as to avoid unconscionable results." *Id.*, 1979 Legislative Committee comments

19  (emphasis added).

20      In *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83 (2000), the

21  California Supreme Court explained that

> [t]he basic principles of severability that emerge from Civil
> Code section 1599 and the case law of illegal contracts appear fully
> applicable to the doctrine of unconscionability. Courts are to look to
> the various purposes of the contract. If the central purpose of the
> contract is tainted with illegality, then the contract as a whole cannot
> be enforced. If the illegality is collateral to the main purpose of the
> contract, and the illegal provision can be extirpated from the contract
> by means of severance or restriction, then such severance and
> restriction are appropriate.

27  *Id.* at 124 (emphasis added).

28

United States District Court

For the Northern District of California

1    Notably, *Armendariz* itself involved an unconscionable arbitration agreement.  And

2    significantly, the *Armendariz* Court ultimately concluded that severance was not possible because

3    the agreement had more than one unlawful provision:

4         it has both an unlawful damages provision and an unconscionably
          unilateral arbitration clause.  Such multiple defects indicate a

5         systematic effort to impose arbitration on an employee not simply as
          an alternative to litigation, but as an inferior forum that works to the

6         employer's advantage.  In other words, given the multiple unlawful
          provisions, the trial court did not abuse its discretion in concluding

7         that the arbitration agreement is permeated by an unlawful purpose.

8    *Id.*

9    In *Davis*, the Ninth Circuit concluded that severance was not possible based on the four

10   substantively unconscionable and/or void provisions of the DRP.  In the case at bar, only three DRP

11   provisions are problematic instead of four (*i.e.*, the notice provision, the confidentiality provision,

12   and the provision exempting OMM from arbitration).  This case presents a closer analysis as one of

13   the four problematic provisions (banning administrative action in contravention of statutes) is not

14   applicable in the case at bar.  While the DRP still contains multiple defects, it is less clear whether

15   the DRP was designed to create an inferior forum for the employee rather than an alternative one

16   and is permeated by unconscionability.

17   However, the Court need not reach a conclusion regarding severance in light of its

18   conclusion *infra* that Ms. Kanbar has waived her right to a judicial forum.  Severability analysis

19   normally comes into play after a finding of unconscionability and functions to provide relief (if the

20   agreement is permeated with unconscionability) to the party seeking to avoid arbitration altogether.

21   The purpose of nonseverance is to protect against arbitration being an inferior forum.  Since Ms.

22   Kanbar will be compelled to arbitrate, it would be perverse to refuse to sever the unconscionable

23   provisions and remit her to an arbitration governed by several unconscionable provisions.

24   D.    Preemption and *Concepcion*

25   Having concluded that the DRP is unconscionable, the Court must now address whether,

26   under *Concepcion*, the FAA preempts this unconscionability determination.

27

28

United States District Court

For the Northern District of California

1    In its papers, OMM argues that all anti-arbitration rules are preempted under the FAA but

2    this does little to explain what an anti-arbitration rule is. The Court concludes that, under

3    *Concepcion* above, a rule is anti-arbitration if it "interferes with [the] fundamental attributes of

4    arbitration" – in particular, its informality, expeditiousness, and relative inexpensiveness.

5    *Concepcion*, 131 S. Ct. at 1748. This definition is consistent with the examples given by the

6    Supreme Court as obviously anti-arbitration – *i.e.*, a rule requiring judicially monitored discovery in

7    arbitration, a rule requiring adherence to the Federal Rules of Evidence in arbitration, or a rule

8    requiring an ultimate disposition of the arbitration by a panel of twelve lay arbitrators (*i.e.*, a jury).

9    *See id.* at 174 (stating that "a court may not 'rely on the uniqueness of an agreement to arbitration as

10   a basis for a state-law holding that enforcement would be unconscionable, for this would enable the

11   court to effect what . . . the state legislature cannot'").

12   In the case at bar, it is difficult to see how nonenforcement of any of the three DRP

13   provisions at issue would amount to such an anti-arbitration rule justifying preemption under the

14   FAA. Nonenforcement of these provisions would amount to (1) a rule requiring the same (or close

15   to the same) statute of limitations as provided by applicable law; (2) a rule barring overly broad

16   confidentiality provisions that would stifle an employee's ability to investigate and gather evidence;

17   and (3) a rule barring overly broad exemptions from arbitration beyond the necessary to protect an

18   employee's legitimate commercial need. Nonenforcement would not compromise or otherwise

19   interfere with the informality, expeditiousness, or inexpensiveness of arbitration. Furthermore,

20   nonenforcement, particularly of the first two provisions, does not rely on or single out the

21   uniqueness of an agreement to arbitrate. Accordingly, the Court holds that its unconscionability

22   determination based on state law is not preempted by the FAA.

23   E.    Waiver

24   For the reasons stated above, the DRP is not enforceable based on unconscionability. This

25   holding, however, does not foreclose OMM's argument that the Court should compel arbitration

26   because it has provided one final reason in support of its position – *i.e.*, that, even if Ms. Kanbar did

27   not waive her right to a judicial forum when she signed the DRP, she subsequently waived that right

28   when, on July 27, 2010, while represented by counsel, she initiated a demand for arbitration with

United States District Court

For the Northern District of California

1  JAMS and then signed – through counsel – a stipulation with OMM which provided in relevant part

2  that the parties agreed "to submit all disputes, claims or controversies to neutral, binding arbitration

3  at JAMS" and "to give up any rights they might possess to have this matter litigated in a court or

4  jury trial." Stofferahn Decl., Ex. D (stipulation). Given these facts, the Court asked the parties to

5  provide supplemental briefing as to whether a waiver can be attributed to an individual based on the

6  actions of an agent, in particular, where that agent is the individual's attorney.

7          In support of their respective positions, both parties cited *Blanton v. Womancare, Inc.*, 38

8  Cal. 3d 396 (1985), in their supplemental briefs. Though *Blanton* is factually distinguishable from

9  the instant case,[2] it does establish a principle relevant to the instant case – namely, that a waiver of

10 the right to a judicial forum is a decision that belongs to the client and not the client's attorney. *See*

11 *id.* at 404 (stating that, while an attorney is authorized by virtue of his employment to bind his client

12 in procedural matters, "[a]n attorney is not authorized, . . . merely by virtue of his retention in

13 litigation, to 'impair the client's substantial rights'" and merely agreeing to arbitration is enough is

14 affect the substantial rights of the client); *cf. New York v. Hill*, 528 U.S. 110, 114 (2000) (indicating

15 that "[w]hat suffices for waiver depends on the nature of the right at issue" and that, "[f]or certain

16 fundamental rights, the defendant must *personally* make an informed waiver") (emphasis added).

17         Moreover, the personal decision to waive the right to a judicial forum must have been

18 knowingly made, at least where, as here, statutory employment rights are at issue. The Ninth Circuit

19 so held in *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299 (9th Cir. 1994), in which it stated that

20 there must be "at least a knowing agreement to arbitrate employment disputes before an employee

21 may be deemed to have waived the comprehensive statutory rights, remedies and procedural

22 protections prescribed in Title VII and related state statutes." *Id.* at 1304; *see also Walker v. Ryan's*

23 *Family Steak Houses, Inc.*, 400 F.3d 370, 381 (6th Cir. 2005) (in FLSA case, applying a knowing

24 and voluntary standard in determining whether employees waived their right to a judicial forum by

25 signing arbitration agreements). *But see Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359, 1372

26 (11th Cir. 2005) ("conclud[ing] that general contract principles govern the enforceability of

27

28         [2] In *Blanton*, the plaintiff expressly told her attorney that she would not enter into binding arbitration but her attorney nevertheless stipulated to arbitration. There is nothing to indicate that, in the instant case, Ms. Kanbar instructed her attorneys not to agree to arbitration.

13

United States District Court
For the Northern District of California

1   arbitration agreements and that no heightened 'knowing and voluntary' standard applies, even where

2   the covered claims include federal statutory claims generally involving a jury trial right"); *Sydnor v.*

3   *Conseco Fin. Servicing Corp.*, 252 F.3d 302, 307 (4th Cir. 2001) (stating that "the fact that the

4   appellees waived their right to a jury trial [does not] require the court to evaluate the agreement to

5   arbitrate under a more demanding standard [*i.e.*, knowing and voluntary]" because "the right to a

6   jury trial attaches in the context of judicial proceedings after it is determined that litigation should

7   proceed before a court" and so "'loss of the right to a jury trial is a necessary and fairly obvious

8   consequence of an agreement to arbitrate'").

9          In the instant case, Ms. Kanbar does not really dispute that she personally made the decision

10  to stipulate to arbitration (*i.e.*, her attorney did not stipulate without her consent).  However, she

11  argues that her waiver of the right to a judicial forum was not knowingly made because, at that time,

12  she personally did not know about *Davis*, in which the Ninth Circuit held the DRP unenforceable.

13  The problem for Ms. Kanbar is that, even if she did not personally know about *Davis*, she was

14  represented by counsel when she made the decision to stipulate.  When a court evaluates whether a

15  waiver was knowingly executed, one important factor to consider is whether the employee was

16  represented by or had an opportunity to consult with a lawyer; if so, that factor weighs in favor of a

17  knowing waiver.  In *Walker*, for example, the court held that,

18              to evaluate whether a plaintiff has knowingly and voluntarily waived
                his or her right to pursue employment claims in federal court, the
19              following factors must be evaluated: (1) plaintiff's experience,
                background, and education; (2) the amount of time the plaintiff had to
20              consider whether to sign the waiver, including whether the employee
                had an opportunity to consult with a lawyer; (3) the clarity of the
21              waiver; (4) consideration for the waiver; as well as (5) the totality of
                the circumstances.
22

23  *Walker*, 400 F.3d at 381; *cf. Davies v. Grossmont Union High School Dist.*, 930 F.2d 1390, 1394-

24  95 (9th Cir. 1991) (concluding that, in signing a settlement agreement, plaintiff knowingly waived

25  his constitutional rights, in part because he was represented by counsel during the settlement

26  negotiations).

27          To the extent Ms. Kanbar argues that her attorney did not know about *Davis* either and

28  therefore her agreement to stipulate to arbitration must be considered ill informed (*i.e.*, unknowing),

**United States District Court**
For the Northern District of California

1    the Court declines to adopt that approach. On this point, *Riley v. American Family Mutual*

2    *Insurance Co.*, 881 F.2d 368 (7th Cir. 1989), is instructive. In *Riley*, the issue was whether the

3    plaintiff had waived her right to bring a Title VII claim based on a release that she had previously

4    signed with the defendant. The Seventh Circuit stated that "[t]here is no question that plaintiff may

5    waive her cause of action under Title VII as part of a voluntary settlement provided her consent to

6    the release was voluntary and knowing." *Id.* at 371. As to whether the waiver was voluntary and

7    knowing, the court indicated that, ordinarily, the totality of the circumstances should be considered,

8    including "whether the plaintiff had a fair opportunity to consult an attorney." *Id.* The court further

9    indicated that it would "refuse[] to allow a plaintiff to escape the consequences of a Title VII

10   settlement entered into under the advice of the plaintiff's chosen counsel." *Id.* In so stating, the

11   court emphasized that

12            competency of counsel is not an appropriate inquiry to consider in
              evaluating whether a settlement is knowingly reached. "[Plaintiff's]

13            claim that the incompetency of his counsel prevented his knowing
              assent to the agreement is misguided. Besides striking us as the sort of

14            collateral attack that defies reasonable limits, we do not regard
              competency of counsel as a relevant factor for district courts to

15            consider in evaluating whether a settlement is knowingly reached.

16   *Id.*

17            The Court finds the analysis in *Riley* persuasive. Under Ms. Kanbar's approach, any time a

18   party is represented by counsel, a court must, in essence, have to undertake an effective-assistance-

19   of-counsel analysis before the arbitration can proceed. While courts do consider collateral attacks

20   on the advice of counsel in the criminal context, *see Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985)

21   (stating that "[a] defendant who pleads guilty upon the advice of counsel 'may only attack the

22   voluntary and intelligent character of the guilty plea by showing that the advice he received from

23   counsel was [ineffective]'"), Ms. Kanbar has not cited any authority supporting that approach in the

24   civil context. A contrary rule could open a perilous path, introducing uncertainty and lack of finality

25   into a host of litigation decisions made by a party (*e.g.*, to settle, to waive jury, etc.) and opening the

26   door into attorney-client communication. *Cf. Facebook, Inc. v. Pac. Northwest Software, Inc.*, Nos.

27   08-16745, 08-16873, 09-15021, 2011 U.S. App. LEXIS 7430, at *10 (9th Cir. Apr. 11, 2011)

28   (noting that, "[w]hen adversaries 'in a roughly equivalent bargaining position and with ready access

1  to counsel' sign an agreement to 'establish[ ] a general peace,' we enforce the clear terms of the

2  agreement[;] [p]arties involved in litigation know that they are locked in combat with an adversary

3  and thus have every reason to be skeptical of each other's claims and representations").

4        Ms. Kanbar's final argument is that, even if the Court were inclined to find her waiver

5  knowing because of the involvement of her attorney, it should still as an equitable matter estop

6  OMM here from asserting waiver because it "actively misrepresented the meaning, impact and legal

7  effect of its DRP directly to Ms. Kanbar." Pl.'s Supp. Br. at 3; *see also* Opp'n at 9 (arguing that

8  OMM had a duty to disclose the Ninth Circuit's decision in *Davis* because "active concealment may

9  exist where a party '[w]hile under no duty to speak, nevertheless does so, but does not speak

10  honestly or makes misleading statements or suppresses facts which materially qualify those stated'")

11  (quoting *Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282, 294 (2004)).

12        The elements of equitable estoppel under California law are as follows:

13          (1) the party to be estopped must be apprised of the facts; (2) that
   party must intend that his or her conduct be acted on, or must so act

14          that the party asserting the estoppel had a right to believe it was so
   intended; (3) the party asserting the estoppel must be ignorant of the

15          true state of facts; and (4) the party asserting the estoppel must
   reasonably rely on the conduct to his or her injury.

16

17  *Honig v. San Francisco Planning Dep't*, 127 Cal. App. 4th 520, 529 (2005); *see also Lantzy v.*

18  *Centex Homes*, 31 Cal. 4th 363, 384 (2003) (also referring to reasonable reliance on the part of the

19  party asserting the estoppel).[3]

20        In the instant case, Ms. Kanbar's argument founders on the first, second, and fourth

21  elements. With respect to the first and second elements, Ms. Kanbar basically charges OMM with

22  misrepresenting that the DRP was enforceable when, in fact, it was not under *Davis*. *See* Pl.'s Supp.

23  Br. at 3. The problem for Ms. Kanbar is that, as discussed above, in *Davis*, the Ninth Circuit found

24          [3] The Court acknowledges that there are cases in which the fourth element has been
described as requiring reliance, without express reference to reasonable reliance. *See, e.g.*,

25  *Honeywell v. Workers' Comp. Appeals Bd.*, 35 Cal. 4th 24, 37 (2005) (stating that, "*[g]enerally
speaking*, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the

26  party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted
upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3)

27  the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to
his injury") (internal quotation marks omitted; emphasis added). But no court has held unreasonable

28  reliance would suffice.

the DRP unenforceable with respect to a plaintiff who had brought a wage-and-hour claim; *Davis* did not foreclose OMM from asserting that the DRP could still be enforced in a different set of circumstances, *e.g.*, where the plaintiff asserts, as here, a claim for discrimination and/or retaliation. As for the fourth element, reasonable reliance is required. Here, as discussed above, Ms. Kanbar was represented by counsel. Thus, even if OMM did make a misrepresentation about the DRP, her reliance on the representation was not reasonable. Even if Ms. Kanbar's attorney had no knowledge of the *Davis* decision specifically, Ms. Kanbar with her attorney should have been equipped to independently review the DRP to determine if there were a basis for challenging it, *e.g.*, based on unconscionability. Equitable estoppel does not apply.

### III.   CONCLUSION

For the foregoing reasons, the Court concludes that, with respect to the claims asserted by Ms. Kanbar in this lawsuit, the three challenged provisions of the DRP are unenforceable because they are unconscionable. However, Ms. Kanbar waived her right to a judicial forum when, in July 2010, while represented by counsel, she initiated a demand for arbitration and stipulated – through counsel – to arbitration.

Accordingly, OMM's motion to compel arbitration is granted. The arbitration will proceed without regard to the three provisions found unconscionable herein. This action is stayed pending the completion of arbitration. *See* 9 U.S.C. § 3.

This order disposes of Docket No. 9.


IT IS SO ORDERED.


Dated: July 21, 2011

_____
EDWARD M. CHEN
United States District Judge